## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TED JACKSON, SR.,** | : | **No. 3:12cv1903** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **DALLAS SCHOOL DISTRICT,** | : | |
| **CATHERINE WEGA, MAUREEN** | : | |
| **B. MATISKA, KAREN B. KYLE,** | : | |
| **LARRY G. SCHULER,** | : | |
| **DR. RICHARD G. COSLETT** | : | |
| **and CHARLES M. PREECE,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is the defendants' motion to dismiss portions of plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The motion has been fully briefed and is ripe for disposition.

## Background

Plaintiff served as the head varsity football coach for the Defendant Dallas School District for twenty-eight years beginning in 1984. (Doc. 1, Compl. ¶ 19). The individual defendants are all school board directors of the Dallas School District, and in late 2011, they declared the position of Head Football Coach open for the 2012-13 school year. (Id. ¶¶ 7-12). In

January 2012, the district ratified that action and sought applications for the head football coach position. (Id. ¶¶ 27-28). Plaintiff applied for the position. (Id. ¶ 29). Plaintiff was not selected for the position. (Id. ¶ 32). Instead, the district, through the votes of the individual defendants, hired Robert Zaruta. (Id. ¶ 33). Zaruta and his family were active in politics, particularly the campaign to elect republican candidate Stephanie Salavantis to the position of Luzerne County District Attorney. (Id. ¶ 37). The individual defendants also supported Salvantis's campaign. (Id. ¶ 38). Plaintiff claims that the defendants opened the position of head football coach to create a vacancy that would allow them to hire their political affiliate, Robert Zaruta. (Id. ¶ 40). Meanwhile, plaintiff declined to give allegiance to public officials, political parties and political factions in power at the district. (Id. ¶ 20).

As the head varsity football coach, plaintiff had led the Dallas School District football team to fourteen Wyoming Valley Conference titles, four Eastern Conference titles, three District 2 titles, and the 1993 PIAA Class AA state title. (Id. ¶¶ 52-55). He was honored by a local newspaper, the *Citizens Voice*, as "Coach of the Decade." (Id. ¶ 59). He was inducted into the Luzerne County Sports Hall of Fame in 2011. (Id. ¶ 60). Zaruta, on the other hand, had never served as a head varsity football coach. He possessed no more than one year of experience as an assistant coach

with a varsity program and had no more than seven years of experience coaching junior high programs.  (Id. ¶¶ 62-63).

Plaintiff's son, Ted Jackson Jr., ("Ted Jr.") also worked at the school. (Id. ¶ 41).   Ted Jr. was threatened with dismissal; he retained counsel and requested a "due process" hearing.  (Id. ¶ 25).  In the fall of 2011, Ted Jr. was, in fact, dismissed from his job at the school.  (Id. ¶ 41).  Plaintiff commented upon his son's dismissal.  (Id.)   He "expressed to his football team his disappointment in how his son had been treated."  (Id. ¶ 65(c)).

The school district used an "evaluation policy and process" for its head coaches.  (Id. ¶ 66).  All head coaches undergo a mid-season and end-of-season evaluation by the high school principal and the athletic director.  (Id. ¶ 68).  This evaluation policy and process is intended primarily to identify potential areas of weakness so that head coaches may improve upon them.  (Id. ¶ 69).   The evaluation lists forty-six categories. The coach is graded as either definite weakness, improvement needed, satisfactory or good in each category.  (Id. ¶¶ 72-73, Doc. 1, Ex. B).  In the mid-season evaluation given in October 2010, plaintiff received a "good" rating in every category.  (Doc. 1, Compl. ¶ 73).

In November 2010, plaintiff was given his end-of-season evaluation. He received "good" ratings in all but one category, where he received a "needs improvement."  (Id. ¶ 76).  In the next year, 2011, plaintiff was

3

provided with his mid-season and end-of-season evaluations on the same day. (Id. ¶ 83). The mid-season evaluation ranked plaintiff as "needs improvement" in one category, "satisfactory" in two categories and "good" in all the remaining categories. (Id. ¶ 81). The end-of-season evaluation ranked plaintiff as "definite weakness" in nine categories, "needs improvement" in one category and "good" in all of the remaining categories. (Id. ¶ 84). Also in this evaluation, plaintiff's overall ranking, which could be satisfactory, probationary or unsatisfactory was listed as unsatisfactory. (Id.) An unsatisfactory ranking means that the coach is not to be recommended for continued coaching. (Id. ¶ 85). Plaintiff asserts that the criticisms lodged against him in these two evaluations were false and unwarranted. (Id. ¶ 86).

The school district's "Administrators & Coaches Athletic Handbook" indicates that the decision to dismiss a coach should be based upon the coach's willingness or ability to make corrections called for in an evaluation. (Id. ¶ 89). Because he was provided the mid-season evaluation on the same day as he received the end-of-season evaluation, plaintiff asserts that his dismissal was not based on his willingness or ability to make corrections based upon the mid-season evaluation. (Id.)

In the evaluations, one of the categories was "Assists athletes in the process of gaining scholarships and choosing colleges." (Id. ¶ 92). In all

evaluations prior to the 2011 evaluations, plaintiff received a "good" ranking in this category.  (Id. ¶ 93).  In the 2011 evaluations, the evaluator noted "I have not seen evidence of this" with regard to this category.  (Id. ¶ 92). Plaintiff provided a written rebuttal to the 2011 evaluations in which he identified thirty-nine student athletes he had assisted in the process of gaining scholarships and obtaining college admission through the football program.  (Id. ¶ 94).  He had in fact assisted as many as sixty students in this regard.  (Id.)  Plaintiff's evaluator did not rebut this evidence.   (Id. ¶ 95).

Based upon these facts, plaintiff instituted the instant four-count action.  His complaint alleges violations of the United States Constitution and he brings his causes of action under the Civil Rights Act, 42 U.S.C. § 1983 (hereinafter "section 1983").  Count I asserts a cause of action for violation of the First and Fourteenth Amendments rights to speech and association with regard to his termination.  (Id. ¶¶ 100-101).  Count II asserts that he was not selected for the position of head coach in violation of his speech and association rights.  (Id. ¶¶ 102-103).  Count I and Count II are asserted against the defendants in their official capacities.  Count III and Count IV assert the same causes of action against the defendants in their individual capacities.  (Id. ¶¶ 104-109).

Plaintiff seeks the following relief: reinstatement to his former

employment; a permanent injunction against the defendants enjoining them from taking adverse employment actions based upon political affiliation, speech and association; a permanent injunction against defendants enjoining them from retaliating against plaintiff for filing this action as vindication of constitutional rights; back pay; compensatory damages; punitive damages; pre-judgment interest; reasonable attorneys' fees and costs and other relief as may be just and equitable.  (Id. ¶¶ 101, 103, 106, 109).

Defendants have moved to dismiss plaintiff's complaint.  The parties have briefed their respective positions, bringing the case to its present posture.

**Jurisdiction**

As plaintiff brings this case pursuant to 42 U.S.C. § 1983 for constitutional violations, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")

**Legal Standard**

This case is before the court pursuant to defendants' motion to dismiss for failure to state a claim upon which relief can be granted, which was filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Granting a Rule 12(b)(6) motion is appropriate if, accepting as true all the

facts alleged in the complaint, the plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," or put another way, "nudged [his or her] claims across the line from conceivable to plausible." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Third Circuit interprets Twombly to require the plaintiff to describe "enough facts to raise a reasonable expectation that discovery will reveal evidence of" each necessary element of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556). Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation." Id. at 234-35.

In relation to Federal Rule of Civil Procedure 8(a)(2), the complaint need only provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Twombly, 550 U.S. at 555 (citation omitted). "[T]he factual detail in a complaint [cannot be] so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation omitted). "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief." Id.

The issue is whether the facts alleged in the complaint, if true, support a claim upon which relief can be granted. In deciding a 12(b)(6)

motion, the court must accept as true all factual allegations in the complaint and give the pleader the benefit of all reasonable inferences that can fairly be drawn therefrom, and view them in the light most favorable to the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.1997). To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**Discussion**

Defendants move to dismiss plaintiff's complaint on the following grounds: 1) Plaintiff has failed to properly plead a freedom of speech claim; 2) the school director defendants are shielded by qualified immunity; 3) plaintiff was not terminated, his coaching agreement expired; and 4) plaintiff cannot maintain a punitive damages claim against a municipal defendant or school director in his official capacity. We will discuss each ground separately.

**1) Plaintiff's alleged speech**

The complaint alleges that plaintiff was employed by a governmental entity that fired him and refused to hire him back, in violation of his right to

freedom of speech. The law provides that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006). The United States Supreme Court has explained that "public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." <u>Id.</u> at 417.

We must determine whether the plaintiff has alleged that he spoke on matters of public concern as a private citizen. "To be protected the speech must be on a matter of public concern, and the employee's interest in expression on this matter must not be outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." <u>Watters v. City of Phila.</u>, 55 F.3d 886, 892 (3d Cir. 1995). Public employee speech is considered to be on a matter of public concern "if it can be fairly considered as relating to any matter of political, social, or other concern to the community. This determination turns on the content, form and context of the public employee's speech." <u>Green v. Phila. Hous. Auth.</u>,105 F.3d 882, 886 (3d Cir. 1997) (internal quotation marks and citations omitted). Thus, to determine whether plaintiff's speech is on a matter of public

concern, we must know its content, form and context.

The United States Supreme Court discussed public officials' right to freedom of speech with regard to making statements on matters of public concern in Pickering v. Bd. of Educ. of Twp. High Sch. Dist., 391 U.S. 563 (1968). In Pickering, the plaintiff, a public school teacher, wrote a letter to a newspaper regarding a proposed tax increase by the Board of Education. Id. at 564. The letter also criticized the manner in which the Board and school superintendent had managed new revenue proposals in the past. Id. The newspaper published the letter, and, as a result, the plaintiff was dismissed from his position. Id. Plaintiff alleged that his dismissal was a violation of his First Amendment rights. The Supreme Court agreed. The Court explained that teachers cannot "constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest in connection with the operation of the public schools in which they work[.]" Id. The Court further explained that "in a case such as the present one, in which the fact of employment is only tangentially and insubstantially involved in the subject matter of the public communication made by a teacher, we conclude that it is necessary to regard the teacher as a member of the general public he seeks to be." Id. at 574.

The Supreme Court returned to the issue of public employees' free

speech rights in the case of <u>Connick v. Myers</u>, 461 U.S. 138 (1983). In <u>Connick</u> an assistant district attorney, Sheila Myers, was told that she was being "transferred to prosecute cases in a different section of the criminal court." <u>Id.</u> at 140. She strongly opposed the transfer and objected to her supervisors. <u>Id.</u> She prepared a questionnaire for her co-workers regarding "office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns." <u>Id.</u> at 141. The District Attorney's Office then terminated her for failing to accept the transfer, and she was told that the distribution of the questionnaire was an act of insubordination. <u>Id.</u> Myers then filed suit alleging that her termination was unlawful because it was based upon her constitutionally-protected freedom of speech. <u>Id.</u>

The Court examined the questionnaire to determine if it involved speech on a matter of public concern. <u>Id.</u> at 146. The Court explained: "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment." <u>Id.</u> "Whether an employees speech addresses a matter of public concern must be determined by the **content, form, and context of a given**

11

**statement** as revealed by the whole record." Id. at 147-48 (emphasis

added).  The Court noted that "[t]he inquiry into the protected status of

speech is one of law, not fact." Id. at 148, n.7.

The Court concluded that the questions were not "of public import in

evaluating the performance of the District Attorney as an elected official."

Id. at 148.  Myers did not try to "inform the public that the District Attorney's

office was not discharging its governmental responsibilities in the

investigation and prosecution of criminal cases" or "seek to bring to light

actual or potential wrongdoing or breach of the public trust[.]" Id.  Instead,

they reflected "one employee's dissatisfaction with a transfer and an

attempt to turn that displeasure into a cause celebre." Id.   Thus, the

Myers' speech was not protected by the First Amendment.

A third Supreme Court case dealing with the issue of a public

employee's freedom of speech is Garcetti v. Ceballos, 547 U.S. 410

(2006).  This case dealt with a deputy district attorney, Richard Ceballos.

Ceballos wrote a memo regarding the disposition of a case.  He

recommended dismissing it because of possible governmental misconduct.

Id. at 414.   He claimed that he was then retaliated against by being

reassigned, transferred to another courthouse and denied a promotion. Id.

at 415.  The Court explained that "[w]hen a citizen enters government

service, the citizen by necessity must accept certain limitations on his or

her freedom." Id. at 418.  "Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for efficient provision of public services." Id.  Regardless, "[s]o long as employees are speaking as citizens about matters of public concern, they must face only those speech restrictions that are necessary for their employers to operate efficiently and effectively." Id. at 419.

In Ceballos, the Court concluded that because Ceballos had written the memo pursuant to his official work duties, he was not speaking as a citizen for First Amendment purposes. Id. at 421.  The court explained that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employe discipline." Id.  "The fact that his duties sometimes required him to speak or write does not mean h is supervisors were prohibited from evaluation his performance." Id. at 422.

The Third Circuit applied the Supreme Court's public employee's freedom of speech analysis in Gorum v. Sessoms, 561 F.3d 179 (3d Cir. 2009).  In Gorum a tenured professor at a state university was dismissed from his position.  Id. at 183.  He sued alleging First Amendment retaliation.  Id.  He alleged that his protected speech included: 1)

assistance he provided to a student athlete who had complications with the school's disciplinary system; and 2) his rescission of an invitation to the university president to speak at a prayer breakfast.  Id. at 183-84.

The Third Circuit analyzed this purported protected speech to determine whether the plaintiff spoke as a "citizen" or as part of his "official duties."  Statements made pursuant to a public employee's professional responsibilities are not protected by the First Amendment.  Id. at 185.  The speech that plaintiff claimed was protected was all made within the scope of his official duties.  Id. at 186.  To determine if speech falls within an employee's professional responsibilities, the court explained that you examine more than the employee's official job description.  Rather, the court should take a practical approach in examining the speech and determine whether it relates to "special knowledge or experience acquired through his job."  Id. 185 (internal quotation marks and citation omitted).

In the instant case, plaintiff has not provided sufficient information regarding the speech he engaged in for us to make a reasoned determination as to whether it is constitutionally protected.  As noted above, the complaint does assert that the speech is constitutionally protected and that it implicated a matter of public concern as the content, form and context of it involved a matter of political, social or other concern to the community.  We must accept as true all factual allegations of the

complaint. These allegations, however, are not factual allegations, but rather, conclusions of law. Thus, we do not accept them as true. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009) (explaining that when deciding a 12(b)(6) motion "[t]he District Court must accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions.").

Thus, it is critical that the speech plaintiff engaged in be evaluated. We must know its content, form and context to determine if it is akin to the speech in Pickering, that is speech by a private citizen on a matter of public concern, or whether it is more like Connick, where an employee is merely dissatisfied with a decision of his employer that does not have any public import. Also, it should be clear that plaintiff was speaking as a private citizen and not making statements pursuant to his official job duties.

The complaint's allegations are not sufficient for us to make this evaluation. The complaint fails to even explicitly set forth the speech that plaintiff engaged in. It merely states several times that plaintiff "engaged in constitutionally protected speech in commenting upon the dismissal of his son, Ted Jackson, Jr., from his duties as coach in the athletic department in the fall of 2011." (Doc. 1, Compl. ¶¶ 22, 41). The complaint also asserts that plaintiff's "speech . . . implicated a matter of public concern as the content, form and context of it involved a matter of political, social or other

concern to the community." (Id. ¶ 23). The complaint further alleges that the high school principal testified at a due process hearing that he recommended plaintiff be terminated as head football coach. One of the reasons for the recommendation was that a local newspaper quoted the plaintiff as disagreeing with the district suspending him as an assistant football coach for one game and terminating him from his duties as head varsity basketball coach.[1] Plaintiff had further expressed to his football team his disappointment regarding the manner in which his son had been treated. (Id. ¶¶ 65(b)-65(c)).

The only other hint provided as to the content, form or context of the speech in question appears in Exhibit "E" to the complaint. This exhibit is an evaluation of the plaintiff as head football coach. The evaluation rates the plaintiff under various categories. Under the category "Accepts and implements athletic department decisions," the evaluation indicated: "Quoted in newspaper as saying 'I simply don't agree with what was done' in regard to suspension of assistant coach." (Doc. 1, Ex. E). Further, under "Sets appropriate example at all times while with athletes," the plaintiff's evaluator indicated: "Oct. 20. Told team he was 'not sure if he was going to coach' Oct. 22 game vs Pocono Mountain as he was mad

---

[1]The complaint is not clear as to whether it was plaintiff's son who is referred to here or whether it is the plaintiff.

about suspension of assistant coach[.]" (Id.)

Thus, plaintiff has not made sufficient allegations for the court to make a reasoned determination as to whether his speech is constitutionally protected. Plaintiff's complaint contains conclusory allegations that the speech is "constitutionally protected" and that it "implicated a matter of public concern as to content, form and context [as] it involved a matter of political, social or other concern to the community." (Doc. 1, Compl. ¶ ¶ 22-23). These averments are merely legal conclusions which do not have a presumption of truth, and they can be disregarded. See Fowler, 578 F.3d at 210-11 (explaining that when deciding a 12(b)(6) motion "[t]he District Court must accept all of the complaint's well pleaded facts as true, but may disregard any legal conclusions.").[2] Because, the complaint's allegations are not sufficient for us to analyze the speech claim, we will provide the plaintiff time to amend the complaint to properly allege a free speech violation. If the plaintiff fails to file a timely amended complaint,

_____

[2]Plaintiff argues that high school sports are matters of public concern because daily attention is devoted to high school sports and the coaches involved in newspapers, on television, radio and the internet. Generally, plaintiff may be correct that high school sports do generate much press. As set forth in the main body of the memorandum, however, the law with regard to whether a matter is of "public concern" is much more nuanced than simply looking at a topic and determining the frequency with which it is reported on in the press. More information needs to be pled for us to determine if plaintiff has a free speech claim that can survive a motion to dismiss.

however, the free speech claims will be dismissed.[3]

## 2) Plaintiff's claims for wrongful termination and unlawful non-selection

Plaintiff's complaint asserts claims for both wrongful termination and unlawful non-selection. Defendant next argues that plaintiff's employment was not "terminated" because he had a yearly contract which was not renewed. Under state law, plaintiff has no property interest in having his contract renewed for a subsequent year, thus, plaintiff cannot assert a claim for the school failing to renew the contract.

--------

[3]In their reply brief, the defendants note that plaintiff advances claims for freedom of association in the same counts as he advances claims for freedom of speech. For purposes of clarity, defendants seek to have the plaintiff amend the complaint to set forth the claims for association and speech in separate counts. Rule 10(b) of the Federal Rules of Civil Procedure provides: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. ... If doing so would promote clarity, each claim founded on a separate transaction or occurrence -and each defense other than a denial-must be stated in a separate count or defense." We agree with the defendant that a separation of these two different legal theories would promote clarity in the plaintiff's complaint. For instance, it appears from plaintiff's brief that although defendants only attack the freedom of speech portion of the complaint, plaintiff interpreted defendants' motion to be an attack of both the freedom of speech and freedom of association claims because both claims are located in the same counts. A careful reading of the papers filed in the case, however, should clear up any confusion in the future. Because the claims are already separated into counts that group the claims based on the same transaction or occurrence, that is either the plaintiff's termination or non-selection, we will not order that the claims be separated any further.

Plaintiff avers that according to both the United States Supreme Court and the Third Circuit Court of Appeals, a property interest is not required for the assertion of a First Amendment claim. Defendants agree with the plaintiff that the First Amendment right to be free from retaliation is not defeated by the lack of property or liberty interest in employment. They argue, however, that under the facts that plaintiff has alleged, he either has a termination case or a non-selection case. He could not suffer both. Here, the facts alleged support a claim that plaintiff was "not selected" rather than "terminated." After a careful review, we find that addressing the merits of this issue is premature.

The complaint clearly sets forth a cause of action for unlawful non-selection of plaintiff for the head football coach position. The issue of wrongful termination, however, is not as clear. The plaintiff and defendants are not fighting over the law on this issue. Factually, however, defendants argue that plaintiff only had yearly contracts. His contract would expire every year as it did in 2011. The only difference between past years and 2011 is that in 2011 plaintiff was not re-hired for another yearly contract. Thus, he may properly assert a "non-selection" claim, but not a "termination" claim. A reading of the complaint, however, does not clearly set forth this scenario. Instead of dismissing these claims outright at this point, it is best to allow discovery to reveal what happened in the

19

case and address this issue at the summary judgment stage if appropriate.

Thus, defendants' motion to dismiss the wrongful termination claims will be

denied.

### 3. Qualified Immunity

The school directors argue that they are shielded from liability under

the doctrine of qualified immunity.  We disagree.  The law provides:

> The doctrine of qualified immunity insulates government officials who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The Supreme Court has established a two-part analysis that governs whether an official is entitled to qualified immunity. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). We ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct.  Id.; Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). Courts may address the two Saucier prongs in any order, at their discretion.  Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). If the plaintiff fails to satisfy either prong, the defendant is entitled to judgment as a matter of law. See id. at 232, 129 S.Ct. 808.

James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012).

Thus, to decide the issue of qualified immunity, we must determine if

the facts alleged show a violation of a constitutional right and whether that

right was clearly established at the time of the alleged misconduct.  Id.

Plaintiff has alleged violations of his rights not to be terminated from his

public employment due to his speech or for political reasons.  Such rights

are firmly established, for example, the Supreme Court discussed the free

speech issue in Pickering, *supra,* in 1968.  The constitutional right to be

free from termination from public employment because of political affiliation

was discussed by the United States Supreme Court 1976.  See Elrod v.

Burns, 427 U.S. 347 (1976).  Accordingly, if the plaintiff establishes his

claims, then qualified immunity will not protect the defendants.  This portion

of the defendants' motion to dismiss will thus be denied.

## 4.  Punitive damages

Finally, defendants challenge plaintiff's claim for punitive damages.

Defendants argue that the school district and the school director

defendants in their official capacities are immune from punitive damages in

section 1983 cases.  Plaintiff agrees that these defendants cannot be liable

for punitive damages.  Thus, the punitive damages claim against the

school district and the school director defendants in their official capacities

will be dismissed.

Further, defendants argue that the plaintiff has not made sufficient

allegations to impose punitive damages against the defendants in their

individual capacities.  Plaintiff argues that the complaint's allegations are

21

sufficient to overcome the motion to dismiss regarding the punitive damages claim against these defendants.  After a careful review, we agree with the plaintiff.

The law provides that a plaintiff may obtain an award of punitive damages in a section 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Kolstad v. Am. Dental Ass'n, 527 U.S. 526, 536 (1999).  A showing of actual malice, however, is not necessary.  The plaintiff must establish that the defendant acted with a "subjective consciousness of a risk of injury or illegality and a criminal indifference to civil obligations."  Id.  (internal quotation marks and citations omitted).  "[A]n employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages."  Id.

In the instant case, the plaintiff alleges that the school director defendants "knowingly and maliciously deprived" plaintiff of his civil rights. (Doc. 1, Compl. ¶ 99).  As noted above, plaintiff avers that the defendants dismissed him as head football coach because he did not share their political beliefs, and they then gave the position to someone who did share those beliefs.  He also alleges that they terminated him in retaliation for the exercise of his free speech rights.  If plaintiff does establish that the

individual defendants acted as alleged then a jury may conclude that the school directors acted "in the face of a perceived risk" that their action would violate federal law, and an award of punitive damages may be appropriate.  Thus, we will not dismiss the punitive damages claim.

**Conclusion**

For the reasons set forth above, we will allow plaintiff ten days to file an amended complaint to plead a proper First Amendment freedom of speech cause of action.  We will dismiss the punitive damages claims against the school district and the individual defendants in their official capacities.  We will deny the motion to dismiss in all other respects.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TED JACKSON, SR.,** | : | No. 3:12cv1903 |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **DALLAS SCHOOL DISTRICT,** | : | |
| **CATHERINE WEGA, MAUREEN** | : | |
| **B. MATISKA, KAREN B. KYLE,** | : | |
| **LARRY G. SCHULER,** | : | |
| **DR. RICHARD G. COSLETT** | : | |
| **and CHARLES M. PREECE,** | : | |
| **Defendants** | : | |

## ORDER

**AND NOW**, to wit, this 19th day of June 2013, defendants' motion to dismiss (Doc. 6) is **GRANTED** in part and **DENIED** in part as follows:

1) The motion is **GRANTED** to the extent that plaintiff is directed to file an amended complaint to plead more thoroughly the content, form and context of the speech that gives rise to his freedom of speech claim. Failure to file an amended complaint that fixes the defects set forth in the accompanying memorandum will result in the dismissal of plaintiff's free speech claims.

2) The punitive damages claim against Dallas School District and the other defendants in their official capacities is **DISMISSED**; and

3) The motion is **DENIED** in all other respects.

**BY THE COURT:**

**s/ James M. Munley**

**JUDGE JAMES M. MUNLEY**
**United States District Court**