## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TED JACKSON, SR.,** | : | **No. 3:12cv1903** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **DALLAS SCHOOL DISTRICT,** | : | |
| **CATHERINE WEGA, MAUREEN** | : | |
| **B. MATISKA, KAREN B. KYLE,** | : | |
| **LARRY G. SCHULER,** | : | |
| **DR. RICHARD G. COSLETT** | : | |
| **and CHARLES M. PREECE,** | : | |
| **Defendants** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court for disposition is the defendants' motion for summary judgment. This case involves Plaintiff's Ted Jackson Sr.'s employment as head football coach at the Dallas Area High School. The school district terminated his employment after twenty-eight years and the issue is whether the district acted due to plaintiff's performance or whether they dismissed him for political reasons in violation of his constitutional rights. After discovery, defendants moved for summary judgment. The parties have briefed their respective positions and the matter is ripe for disposition.

**Background**

Plaintiff Ted Jackson, Sr., (hereinafter "plaintiff") served as an annually appointed Head Football Coach for Defendant Dallas School District.  (Defs.' Concise Stmt. of Facts (hereinafter "SOF" ¶ 1).   The principal of the school, Jeffrey Shaffer, "supervised head coaches, including plaintiff."  (Id. ¶ 2).  As part of this supervision, Shaffer performed two evaluations of plaintiff per year, a mid-season and an end-of-season evaluation.  (Id. ¶ 6).  Dallas School District's "Administrators & Coaches Handbook" governs the conduct of the head coaches.  (Id. ¶ 3).

Plaintiff's son, Ted Jackson, Jr., (hereinafter "Jackson, Jr.") served as an assistant coach on plaintiff's staff.  (Id. ¶ 8).  Jackson, Jr. was penalized twice in October 2011 for behavior during football games.  (Id. ¶¶ 9-10).[1]  The school  suspended Jackson, Jr. from October 18, 2011 through October 21, 2011.  (Id. ¶ 11).  Plaintiff then informed the football team that he was upset with the way the school handled the suspension of Jackson Jr., and that he might not coach an upcoming game.  (Id. ¶¶ 13-14).[2]

_____

[1]Plaintiff disputes the facts surrounding the first penalty.  See Doc. 38, Pl's Resp. to SOF ¶ 9).

[2]Evidently, plaintiff was disgruntled that Shaffer had told him untruthfully that Jackson Jr. would only be suspended for a single game and that his other duties, including that of head boys basketball coach

Defendants highlight several other incidents involving plaintiff as relevant to the instant case:

1) During a football game with Tunkhannock High School in 2009, the Pennsylvania Interscholastic Athletic Association, (hereinafter "PIAA"), the sanctioning body for athletic events held in the state, issued a penalty to plaintiff when members of his team urinated on the other school's tennis court; (Id. ¶ 17).

2) The school's athletic director Nancy Roberts served as plaintiff's immediate supervisor.  (Id. ¶ 22).   One of her duties was to provide the school's starting lineup to the public address announcer at games.  She failed to do this on November 12, 2011 at a playoff game with Scranton Prep School.  (Id. ¶ 21).   The defendants assert that plaintiff reacted unprofessionally toward Roberts regarding this failure and that Shaffer, the school principal, issued him a written reprimand.  (Id. ¶¶ 23-25).

In his end-of-season evaluation, the principal mentioned "the November 12, 2011 incident at the Scranton Prep game, Jackson's comments to the press and his students about being upset that his son was suspended, the unsportsmanlike conduct penalties, and Jackson's

_____

would be unaffected.  (Doc. 38, Pl. Resp. to SOF ¶ 13).

3

decision to tell his students that the may not coach their game."  (Id. ¶ 29).

The evaluation rated plaintiff as "unsatisfactory" and recommended that he

not remain the coach.  (Id. ¶ 30).

Plaintiff had the right to appeal this unsatisfactory evaluation to the

Superintendent of Schools, Frank Galicki.  Plaintiff did so appeal.  (Id.

¶ 31).  Galicki held an appeal  meeting on December 8, 2011 with plaintiff,

Roberts and Schaffer.  (Id. ¶ 34).  After the meeting, Roberts, Shaffer and

Galicki issued a written decision and recommended the School Board

declare plaintiff's position "open" as of the 2012-2013 school year.  (Id.

¶ 36).  Subsequently, the school board voted to declare the position open

and the members voting in favor of opening the position are the individual

defendants, Dr. Richard Coslett, Karen Kyle, Maureen Matiska, Charles

Preece, Larry Schuler and Catherine Wega.  (Id. ¶¶ 37-39).

Eventually, the board interviewed potential candidates for the head

coach position.  Amongst those who they interviewed were plaintiff and

Robert Zaruta.  (Id. ¶ 43).  The board eventually offered the position to

Zaruta.  (Id. ¶ 46).  The defendants assert that Zaruta was hired because

of his qualifications.  Plaintiff asserts that he is more qualified for the

position than Zaruta and that  Zaruta was hired due to his political

4

affiliations.  Zaruta is the same political party as the majority of the board and displayed campaign signs on his lawn for several of them.  Whereas plaintiff is a different political party from the board majority and did not campaign for any of them.

Plaintiff's complaint alleges violations of the United States Constitution and he brings his causes of action under the Civil Rights Act, 42 U.S.C. § 1983 (hereinafter "section 1983").  (Doc. 18, Am. Compl.). Count I asserts a cause of action for violation of the First and Fourteenth Amendments rights to speech and association with regard to his termination.  (Id. ¶¶ 122-23).  Count II asserts that he was not selected for the position of head coach in violation of his speech and association rights. (Id. ¶¶ 124-25).  Count I and Count II are asserted against the defendants in their official capacities.  Count III and Count IV assert the same causes of action against the defendants in their individual capacities.  (Id. ¶¶ 126-31).

**Jurisdiction**

As plaintiff brings this case pursuant to 42 U.S.C. § 1983 for constitutional violations, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under

the Constitution, laws, or treaties of the United States.")

**Legal Standard**

Granting summary judgment is proper "'if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law.'" See

Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV.

P. 56(c)). "[T]his standard provides that the mere existence of some

alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must

examine the facts in the light most favorable to the party opposing the

motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949

(3d Cir. 1990). The burden is on the moving party to demonstrate that the

evidence is such that a reasonable jury could not return a verdict for the

non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material

when it might affect the outcome of the suit under the governing law. Id.

6

Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

Defendants move for summary judgment and raise the following six (6) issues: 1) Are defendants entitled to summary judgment with regard to plaintiff's Free Association Clause claim under the First/Fourteenth Amendment?  2) Are defendants entitled to summary judgment with regard to plaintiff's claim under the Free Speech Clause of the First/ Fourteenth Amendment? 3) Is Defendant Dallas School District entitled to summary judgment because plaintiff has failed to identify a policy, practice or custom that led to a constitutional harm? 4) Are the individual defendants shielded by qualified immunity?  5) Should judgment be granted to the school

district with regard to the punitive damages claim? and 6) Are the individual defendants entitled to judgment on the punitive damages claim?   We will address these issues in turn.

## 1. Free Association under the First/Fourteenth Amendment

All counts of plaintiff's amended complaint raise issues involving his First Amendment right to free association. The defendants first attack this "free association" claim.  The issue here is whether plaintiff's political association, or lack thereof, led to his termination/failure to be re-hired. Such a claim is not purely a "free association" claim under the Constitution's First Amendment, but also a "free speech" claim.  Galli v. N.J. Meadowlands Comm'n, 490 F.3d 265, 271 (3d Cir. 2007).  Thus, plaintiff's complaint alleges this as a "free association/free speech claim".[3]

Plaintiff clarifies that his association claim involves political "unaffiliation" and that he asserts a right not to be affiliated with the Republican party politics of the majority board members.   He asserts that the school board unconstitutionally discharged him to make room for a more favored political affiliate or supporter.

The law provides that to establish a prima facie case of

_____

[3]Defendants treat the free speech claim as a separate issue, but plaintiff does not seek to pursue a separate free speech claim.

8

discrimination based upon political association, a public employee must prove:"(1) that the employee works for a public agency in a position that does not require a political affiliation, (2) that the employee maintained an affiliation with a political party, and (3) that the employee's political affiliation was a substantial or motivating factor in the adverse employment decision." Goodman v. Pa. Turnpike Comm'n, 293 F.3d 655, 663-64 (3d Cir. 2002).

After the plaintiff makes out this *prima facie* case, "the employer may avoid a finding of liability by proving by a preponderance of the evidence that the same employment action would have been taken even in the absence of the protected activity." Stephens v. Kerrigan, 122 F.3d 171, 176 (3d Cir. 1997). In other words, the burden of production shifts to the defendant employer who must present evidence of a non-discriminatory reason for its employment decision. Then the "plaintiffs may prevail by discrediting that proffered reason, either circumstantially or directly, or by adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or substantial cause of the adverse action." Id. at 181.

In the instant case, the parties do not dispute that plaintiff worked for

9

a public agency in a position that does not require a political affiliation.  The

parties also appear to agree that the plaintiff maintained an affiliation with a

political party - - or as the plaintiff puts it an "unaffiliation" or failure to

support the political party in power.  See Galli, 490 F.3d at 268 ("First

Amendment rights to freedom of speech and association protect

government employees who lack political affiliation from political patronage

discrimination.").  Thus, he has the right not to be affiliated with the

Republican party majority school board members. The issue that remains

with regard to the prima facie case is whether plaintiff has presented

evidence that discrimination was more likely than not a motivating or

substantial cause of the adverse employment action.

    In support of his position that discrimination was more likely than not

a motivating or substantial cause of the adverse employment action,

plaintiff points out that he had better qualifications for the position than the

person who got it, Zaruta.  He then points out he had a different political

affiliation from the political affiliation of those who voted to replace him with

Zaruta.  Finally, he notes that Zaruta had campaign signs for three of the

board member defendants (Coslett, Kyle and Matiska) in his yard in 2011.

(Doc. 38 Pl. Counterstatement of Material Facts ¶ 30).

Thus, we are left with evidence that plaintiff was more qualified for the position and that Zaruta placed campaign signs in his yard for three of the board members.  Evidence alone that Zaruta was less qualified than plaintiff may not be sufficient to defeat a motion for summary judgment qualifications, "it is not enough for a plaintiff to show that the employer's decision was wrong or mistaken, because the issue is whether the employer acted with discriminatory animus." Abramson v. William Paterson Coll. of N.J., 260 F.3d 265, 283 (3d Cir. 2001).  However, that is here coupled with the fact that Zaruta supported the campaigns of three of the decision makers by placing signs in his yard.  Moreover, plaintiff's political party registration is Democrat whereas the Board majority and plaintiff's replacement were all Republicans.[4]  Plaintiff has submitted sufficient evidence, which if believed by the factfinder, may give rise to the

---

[4]Plaintiff also highlights Zaruta and his son's involvement in the election of Stephanie Salavantis as district attorney for Luzerne County and their relationship with the Salavantis family, for example, Zaruta listed Stephanie Salavantis's father as the first reference in his job application for the football coach position.  (Doc. 38, Pl. Counterstatment of Mat. Facts ¶¶ 19-20).  Plaintiff does not make a convincing argument as to the manner in which the Salavantis information ties into this ouster as football coach and the Zaruta's hiring.  No evidence exists that the board members also supported Salavantis as a district attorney candidate and no evidence direct or circumstantial that this connection with the Salavantis family had anything to do with the employment decisions at issue.

inference that he was forced out of his job and replaced by Zaruta for

political reasons. Thus, he has met his prima facie case.  The burden shifts

to the defendant to provide non-discriminatory reasons - - here they assert

that their decision was based on the plaintiff's performance.  Plaintiff then

rebuts this with the same evidence used to support his prima facie case.

Viewing the evidence in the light most favorable to plaintiff, a

reasonable jury could conclude that defendants sought to open up the

position plaintiff held for political reason, took affirmative steps to facilitate

plaintiff's termination and covered it up in the guise of a poor performance

evaluation.  As such, plaintiff has pointed to evidence in the record that

could cause a reasonable jury to disbelieve defendants' non-discriminatory

reason for plaintiff's termination (and failure to re-hire him) thereby creating

a genuine dispute of material fact regarding the real reason for defendants'

actions.  Summary judgment on this issue will therefore be denied.

**2.  Free Speech Clause of the First/Fourteenth Amendment**

All counts of plaintiff's amended complaint raise issues involving his

First Amendment right to free speech.  Defendant next challenges plaintiff

free speech claims.  In his opposition brief, the plaintiff states that he "is

not proceeding on a political speech theory."  (Doc. 39, Pl.'s Opp'n  Br. at 8

n.1).  Accordingly, summary judgment will be granted to the defendants as

unopposed with regard to plaintiff's free speech claims.

## 3.  Policy, practice or custom

Civil rights claims, such as those at issue in the instant case cannot

be maintained against a governmental organization such as the Defendant

Dallas School District on the theory of respondeat superior.  Monell v.

Dept. of Soc. Servs., 436 U.S. 658, 694 (1978).  Rather, governmental

entities are only liable under section 1983 when the "execution of a

government's policy or custom, whether made by its lawmakers or by those

whose edicts or acts may fairly be said to represent official policy, inflicts

[the] injury. . . ."  Id.  Defendants argue that summary judgment is

appropriate because the plaintiff has failed to identify a policy or custom

that caused the alleged constitutional violations.  We disagree.

Courts have clarified that government organizations can be liable

under Section 1983 for the civil rights violations of its employees in the

following situations:

> First, the municipality will be liable if its employee
> acted pursuant to a formal government policy or a
> standard operating procedure long accepted within
> the government entity, Jett v. Dallas Independent
> School District, 491 U.S. 701, 737, 109 S.Ct. 2702,
> 105 L.Ed.2d 598 (1989); second, liability will attach

13

> when the individual has policy making authority
> rendering his or her behavior an act of official
> government policy, <u>Pembaur v. City of Cincinnati</u>,
> 475 U.S. 469, 480–81, 106 S.Ct. 1292, 89 L.Ed.2d
> 452 (1986); third, the municipality will be liable if an
> official with authority has ratified the
> unconstitutional actions of a subordinate, rendering
> such behavior official for liability purposes, <u>City of
> St. Louis v. Praprotnik</u>, 485 U.S. 112, 127, 108
> S.Ct. 915, 99 L.Ed.2d 107 (1988).

<u>McGreevy v. Stroup</u>, 413 F.3d 359, 367 (3d Cir.2005).

In the instant case, plaintiff alleges that the school directors violated his rights.  School directors qualify as individuals with final policy making authority for the school district and thus their decisions are official governmental policy for purposes of <u>Monell</u> liability.  <u>See</u> <u>Sciotto v. Marple Newton Sch. Dist.</u>, 81 F. Supp. 2d 559, 574-57 (E.D. Pa. 1999). Accordingly, the school district may be held liable for the actions of the individual defendant school directors and the defendants' motion for summary judgment on this ground will be denied.

### 4.  Qualified Immunity

Next, the defendants argue that the doctrine of qualified immunity shields them from liability.  Qualified immunity can serve as a defense to an individual defendant accused of a civil rights violation.  <u>See</u>, <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991). "A government official sued under §

14

1983 is entitled to qualified immunity unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Carroll v. Carman, – U.S. –, 135 S.Ct. 348, 350 (2014). For a qualified immunity analysis, therefore, the court must examine: 1) whether the officials violated a constitutional right and 2) whether that right was clearly established at the time.  Wright v. City of Phila., 409 F.3d 595, 699–600 (3d Cir. 2005) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

A legal right is "clearly established" where "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In other words, existing precedent must have placed the statutory or constitutional question beyond debate. This doctrine gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law."  Carroll, 135 S.Ct. at 350.

The rights at issue in the instant case, personnel action taken for reasons of political patronage, were clearly established at the time of the defendants' alleged actions.  See, e.g., Rutan v. Republican Party of Ill.,

15

497 U.S. 62 (1990) (explaining that promotions, transfers, and recalls based upon political affiliation or support impermissibly infringe a public employees' First Amendment rights).  As such, the defendants' qualified immunity argument is unconvincing, and the motion based on qualified immunity will be denied.

**5.  Punitive damages**

Finally, defendants move for summary judgment on plaintiff's claim for punitive damages.

First, the defendants argue that punitive damages are not available against the school district or the other defendants in their official capacities.  We agree that punitive damages are not available against the school district or the individual defendants in their official capacities.  See Strickland v. Mahoning Twp., 647 F. Supp. 2d 422 (M.D. Pa. 2009).  The only question that remains, therefore, is whether judgment should be granted to the defendants on the punitive damages claim against the defendants in their individual capacities.

"[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to

16

the federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56

(1983).  In the instant case, the jury may be able to determine that the

individual defendants' actions evinced a reckless or callous indifference to

plaintiff's federally protected rights.  Thus, it is inappropriate to grant

judgment on the punitive damages claim at this time.

**Conclusion**

Based upon the above reasoning, the defendants' motion for

summary judgment will be granted in part and denied in part.  It will be

granted as unopposed with regard to plaintiff's free speech claims and it

will be granted with regard to punitive damages against the school district

and the defendants in their official capacities.  It will be denied in all other

respects.  Remaining in the case will be plaintiff's first amendment

associational claims, including the punitive damage claim against the

defendants in their individual capacities.  An appropriate order follows.


**Date: <u>July 21, 2015</u>**              **s/ James M. Munley**
                                                   **JUDGE JAMES M. MUNLEY**
                                                   **United States District Court**